# DATA FEED LICENSE AGREEMENT

THIS DATA FEED LICENSE AGREEMENT (the "Agreement") is entered into, effective as of the earlier of: 1) The date on which Recipient has implemented its new servers and hardware and has downloaded the entire Likeness database, or 2) October 1, 2014 (the "Effective Date"), by and between Likeness Data, LLC, a Delaware limited liability company ("Likeness") and Vigilant Solutions, Inc., a Delaware Corporation ("Recipient").

WHEREAS, Likeness has developed and operates a certain database Records system (the "Likeness System") which collects, validates, processes, records and disseminates certain data relating to individual's arrest records and the corresponding arrest photograph (the "Records");

WHEREAS, Likeness has developed and operates a certain data feed (the "Data Feed"), which make the Records available for transmission to, and reception by, authorized recipients for such recipients' internal use or further distribution;

WHEREAS, Recipient operates a facial recognition system for use in law enforcement; and

WHEREAS, the parties desire that Likeness, through its Data Feed, make the Records available for Recipient's reception and internal use to enhance its facial recognition system, subject to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the covenants and mutual promises set forth above and for other good and valuable consideration, the parties agree as follows:

1. **LICENSE AND SERVICES.**

    a. Subject to the terms and conditions of this Agreement, Likeness hereby grants Recipient a limited, non-exclusive, non-transferable, non-sublicenseable (other than any sublicense permitted herein) license to:

        (i) receive and process the Records pursuant to the Data Feed described in subsection (b) below, either through a TCP/IP or a multicast data stream provided by extranet or similar service providers approved by Likeness, or through direct connect to Likeness or such other method as Likeness may permit in its discretion; and

        (ii) transmit the Records to Recipient's own employees and authorized agents and for Recipient's business purposes to users authorized by Recipient to receive and use the Records.

    b. The parties shall work together to mutually determine the most effective method of transmittal for the Records. If, at any time during the Term, Recipient desires to modify any such selection, it shall submit its request to Likeness in writing, and any such modification shall become effective upon written acceptance of the modification by Likeness.

KP

    c. Recipient shall have an unlimited usage access to the Records within the Likeness System for the duration of the Term. Such Records will be updated at least monthly by Likeness.

    d. Likeness Data will provide the initial Records contained within its entire database, a minimum of 12 million records, to Vigilant within the first week after the agreement becomes effective.

    e. Likeness shall provide a minimum of 80,000 new and unique Records each month for the duration of the Term.

    f. Likeness shall use its best efforts to reasonably assist Recipient in the creation and maintenance of information systems to utilize the Records.

    g. Sublicense. Recipient may grant a sublicense for the Records subject to the following terms and conditions:

        (i) The selection of any Sublicensee (such as Transunion/TLO or any public records vendor) shall be mutually agreed upon by Likeness and Recipient prior to the grant of any sublicense;

        (ii) Likeness reserves the right to amend the payments described herein in consideration for the granting of sublicense privileges in the Records to Recipient. Likeness will accept appended public records data to the Records in lieu of payment for granting sublicense privileges, where permissible as per Gramm Leach Bliley Act and the Drivers Privacy Protection Act.

        (iii) Any Sublicensee shall be subject to the terms and restrictions of this Agreement;

        (iv) Any Sublicensee shall <u>not</u> have authority to sublicense any of the Records without prior written authority by Likeness; and

        (v) Recipient shall be responsible for ensuring Sublicensee maintains the Records pursuant to the restrictions described herein.

2. **RESTRICTIONS.**

    a. Although the look and feel of Recipient's display of the Records shall be determined by Recipient, Recipient shall not alter the Records in any manner that adversely affects its accuracy or integrity or that renders it misleading, and Recipient agrees to reasonably monitor and review the activities of its employees and authorized agents to ensure, to the extent practicable, that no unauthorized use of the Records occurs.

    b. Recipient shall only furnish, or cause or permit to be furnished, all or any part of the Records to those qualified to receive the Records from Recipient under (i) Likeness's operating procedures, specifications, and other technical or regulatory documentation; (ii) all other applicable laws, statutes and regulations; and (iii) this Agreement.

c. For purposes of clarification, the license rights granted herein shall not extend to any subsidiaries or other affiliates or related entities (not including any Sublicensee) of Recipient unless they otherwise qualify to receive such data pursuant to Section 1(a)(ii) and Section 2(b) above or as agreed in writing by Likeness.

3. **RECIPIENT RESPONSIBILITIES.**

   a. Recipient shall be responsible for, and shall bear all costs associated with, the receipt of Records from Likeness, whether directly through a TCP/IP or multicast, or indirectly through an approved extranet or similar service provider's TCIP/IP, multicast or other method approved by Likeness, as well as the further transmission, storage and distribution of the Records to its employees, authorized agents and/or Subscribers after such receipt, including, without limitation, (i) obtaining the requisite quantity and quality of common carrier communication lines, (ii) ensuring the reliability and continued availability of such communications lines, and (iii) interfacing with the Likeness System. Without limiting the generality of the foregoing, if Recipient accesses a Data Feed through an extranet or similar service provider's multicast, Recipient will be solely responsible for contacting the applicable extranet provider(s), entering into any necessary agreements with them and paying all applicable fees charged by them to connect to their network.

   b. Recipient shall maintain complete and accurate records identifying all employees, authorized agents, and users receiving Records as Likeness may reasonably request. Recipient will provide such Records to Likeness from time to time upon Likeness's reasonable request. Likeness may, by notice to Recipient, unilaterally: (i) limit or terminate the right of any employee, authorized agent, Subscriber or other person to receive or use the Records; and (ii) control the manner in which the Records is formatted by Recipient to ensure the completeness, fairness and integrity of the Records. Recipient shall promptly comply with any such notice.

   c. Recipient acknowledges that Likeness may provide the Records set forth in subsection (b) above to law enforcement, regulatory, or other authorized agencies, (the "Authorities") in connection with any investigation or prosecution of crimes or violations alleged to have been committed using the Data Feed or the Records, and Recipient agrees to reasonably cooperate with Likeness and such Authorities in connection therewith.

   d. Recipient will use its best efforts to configure and operate its communications network so that it remains at all times secure from unauthorized entry or interference and to prevent the Records from being taken from said communications network, or in any way communicated, divulged or published except through the channels of transmission authorized hereunder. Recipient will adopt and enforce, as respects persons entering such place or places of business, reasonable requirements in order to prevent the Records from being improperly taken from any of Recipient's offices or places of business.

4. **CONSIDERATION.**

   a. The initial charge for Recipient's use of any Market Data Feed and the Records during the Term of this Agreement shall be **Twenty Thousand and 00/100 Dollars**

3



*KR 8/24/14*

($20,000.00) per quarter. Payment shall be due net 30 days after the first day of each respective quarter ~~(i.e. payment due July 31, 2014 for period from July 1 - September 30, 2014)~~. The first $20,000 is due net 30 from the Executed Date and subsequent $20,000 payments are due +90 days from first payment, +180 days from the first payment and +270 days from the first payment.

*TRJ 8/15/14*

b. If at any time during the Term, Likeness fails to provide the minimum number of new Records as described in Section 1(d), above, for three (3) consecutive months, Likeness shall be in default. In the event of a default of this Agreement by Likeness, Recipient may, at its sole discretion, terminate or move to renegotiate the terms of this Agreement upon providing prior written notice (in the manner set forth in Section 14) of the breach, and Likeness's failure to cure such default as governed by Section 10(b)(ii).

c. Recipient shall assume full and complete responsibility for the payment of any taxes, charges or assessments imposed on Recipient, its employees and authorized agents or Likeness (except for U.S. federal, state, or local income taxes, if any, imposed on Likeness) by any foreign or domestic national, state, provincial or local governmental bodies, or subdivisions thereof, and any penalties or interest, relating to the provision to, or use by, Recipient and its employees and authorized agents of the Data Feed and the Records hereunder.

## 5. OWNERSHIP, MODIFICATIONS.

a. Likeness shall retain sole and exclusive ownership of all right, title and interest (including, without limitation, all patent, copyright, trademark, and trade secret rights), now existing or hereafter coming into existence, in and to the Records, Data Feed and Likeness System (but not including any internal distribution or database management system of Recipient, as applicable, which shall remain the sole property of Recipient, and (ii) the multicast technology provided by the applicable extranet or similar service provider). All rights not expressly granted hereunder are reserved by Likeness, and Recipient agrees that it does not acquire any rights, express or implied, therein, other than the licenses expressly set forth in this Agreement.

b. Neither party will use any of the other party's trademarks, logos, trade names or service marks (collectively, the "Marks") without the other party's prior written consent. Any permitted use by one party of the other's Marks shall be subject to the owner's quality control standards, and all associated goodwill shall inure to the benefit of the respective owner.

## 6. RECIPIENT REPRESENTATIONS, WARRANTIES AND COVENANTS.

Recipient represents, warrants and covenants that it will not use or knowingly permit anyone to use the Records for any purpose or in any manner not authorized by this Agreement or for any unlawful purpose.

## 7. LIKENESS WARRANTY DISCLAIMER.

Likeness does not warrant or guarantee the timeliness, sequence, accuracy or completeness of the Records or the Data Feed. Likeness makes every effort to ensure accurate Records,

4



*KR  TRJ*

but all of the Records are obtained from third party sources that may contain errors. THE RECORDS AND DATA FEED ARE PROVIDED AS-IS. LIKENESS MAKES NO WARRANTIES, WHETHER EXPRESS, IMPLIED, OR STATUTORY, WITH RESPECT TO THE DATA FEED OR THE RECORDS, OR ANY MULTICAST SERVICES FROM EXTRANET OR SIMILAR SERVICE PROVIDERS, INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, WARRANTIES OF NON-INFRINGEMENT, WARRANTIES FROM A COURSE OF DEALING OR USE OF TRADE, OR ANY WARRANTIES THAT THE DATA FEEDS OR THE RECORDS WILL MEET RECIPIENT'S OR ITS SUBSCRIBERS' REQUIREMENTS; THAT THE DATA FEED WILL OPERATE IN COMBINATIONS WITH ANY PARTICULAR HARDWARE, SOFTWARE, SYSTEMS, OR DATA WHICH RECIPIENT MAY SELECT FOR USE; THAT THE OPERATION OF THE DATA FEEDS WILL BE UNINTERRUPTED OR ERROR-FREE; OR THAT ERRORS WILL BE CORRECTED.

8. **INDEMNIFICATION.**

   a. Recipient shall indemnify, defend and hold harmless Likeness and its affiliates and each of their officers, directors, employees and agents (collectively, the "Indemnified Parties") from and against any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, costs, judgments, settlements, and expenses of whatever nature, including, without limitation, and attorneys' fees (collectively, "Claims or Losses") imposed on, incurred by or asserted against the Indemnified Parties as a result of or relating to this Agreement or the use of the Data Feed, any extranet or similar service provider's multicast services or the Records by Recipient, its employees or agents. Likeness will promptly notify Recipient upon its becoming aware of any such Claims or Losses and will reasonably cooperate with Recipient in the defense of the same at Recipient's expense.

   b. Likeness shall have no liability for, and no obligation to defend or indemnify Recipient, its employees or agents or other third parties from or against, any Claims or Losses whatsoever arising out of or relating to this Agreement, the Data Feed, any extranet or similar service providers' multicast services, or the Records, including, without limitation, for any errors, inaccuracies, omissions, or other defects in, or untimeliness or unauthenticity of, the Records, or for any delay or interruption in the transmission thereof to Recipient, its employees or agents or any Subscriber or for any software viruses or infringement claims, or for any claims or losses arising therefrom or occasioned thereby.

9. **LIMITATION OF LIABILITY; LIMITATION OF DAMAGES.**

IN NO EVENT SHALL LIKENESS BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST PROFITS, LOST DATA, LOST GOOD WILL, LOST BUSINESS, OR DOWN TIME, INCURRED BY RECIPIENT OR ITS EMPLOYEES, AGENTS OR SUBSCRIBERS AS A RESULT OF ANY BREACH OF THIS AGREEMENT OR ANY NEGLIGENCE IN CARRYING OUT THIS AGREEMENT, OR ANY OTHER CAUSE, WHETHER IN AN ACTION IN CONTRACT OR TORT, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. LIKENESS'S AGGREGATE AND CUMULATIVE LIABILITY FOR DAMAGES HEREUNDER SHALL IN NO EVENT EXCEED THE TOTAL AMOUNTS PAID BY RECIPIENT TO LIKENESS UNDER SECTION 4 IN THE QUARTER PRIOR TO THE CLAIM. THE PARTIES



AGREE THAT THE FOREGOING LIMITATIONS REPRESENT A REASONABLE ALLOCATION OF RISK UNDER THIS AGREEMENT AND THAT LIKENESS WOULD NOT BE ABLE TO PROVIDE THE RECORDS TO RECIPIENT AT THE PRICES SET FORTH HEREIN WITHOUT SUCH LIMITATIONS.

**10. TERM AND TERMINATION.**

   a. This Agreement shall be effective as of the Effective Date and shall continue in effect for a period of one (1) year.

   b. This Agreement may be terminated: (i) by either party, upon not less than ninety (90) days' prior written notice to the other party for convenience, only after the first one (1) year of the agreement; (ii) in the event of a breach of this Agreement, by the party not in breach upon written notice provided that it has first given the breaching party not less than ten (10) days' prior written notice describing the breach in reasonable detail, and the breaching party has failed to cure such breach within the thirty day period; (iii) by Likeness, immediately, in the event that Likeness, in its sole discretion, determines that any failure on the part of the Recipient to comply with this Agreement has or is likely to have an adverse impact on the operation or performance of the Likeness System, Records or market or likely to cause disproportionate harm to Likeness's interests should termination be delayed.

   c. Sections 7-17 shall survive the expiration or earlier termination of this Agreement.

**11. EFFECT OF TERMINATION.**

Termination of this Agreement shall not limit either party from pursuing other remedies available to it, including injunctive relief. Upon termination, Recipient shall immediately cease any and all use of the Records and terminate all access by its employees and agents to the Records.

**12. INDEPENDENT CONTRACTORS.**

The parties to this Agreement are independent contractors, and neither party is an employee, agent, partner or joint venturer of the other. Nothing in this Agreement shall be construed to create a relationship of partnership, joint venture, employment, franchise, or agency between the parties. Neither party shall have the power to bind the other or incur obligations on the other's behalf without the other's prior written consent.

**13. GOVERNING LAW AND VENUE.**

This Agreement and all matters arising out of or relating to this Agreement shall be governed by the laws of the State of Texas, excluding its conflict of law provisions, and the patent and copyright provisions of federal law. The courts located in Travis County, Texas shall have exclusive jurisdiction and venue over any dispute arising out of or relating to this Agreement and the parties hereby consent to such jurisdiction.

**14. NOTICES.**

KP

All notices required hereunder shall be in writing and shall be sufficiently given if delivered personally or mailed by First Class mail, postage prepaid or by Federal Express or other reliable common carrier to the addresses first set forth above and the authorized signatories set forth below.

### 15. SEVERABILITY; AMENDMENTS.

In the event anyone or more of the provisions of the Agreement shall for any reason be held to be invalid, illegal or unenforceable, the remaining provisions of the Agreement shall be unimpaired, and the invalid, illegal, or unenforceable provision shall be replaced by a mutually acceptable provision which comes closest to the intention of the parties underlying the invalid, illegal or unenforceable provision.

### 16. ASSIGNMENT.

Recipient shall have no right to assign or otherwise transfer this Agreement or any of its rights or delegate any of its duties under this Agreement without the prior written consent of Likeness, and any attempted transfer without such written consent shall be void and of no effect.

### 17. ENTIRE AGREEMENT.

This Agreement, along with any Exhibits, which are hereby incorporated by reference, constitutes the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior representations, proposals, discussions and communications, whether oral or written.

### 18. COUNTERPARTS.

This Agreement, and any Exhibits, may be executed simultaneously in two (2) or more counterparts, each of which will be considered an original, but all of which together will constitute one and the same instrument. The exchange of a fully executed agreement (in counterparts or otherwise) by fax, pdf or other electronic signature format shall be sufficient to bind the parties to the terms and conditions of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

LIKENESS DATA, LLC

_____  8/24/14
Kyle Pratt
President

**Vigilant Solutions, Inc.**

_____/s/ Tom Joyce_____
Tom Joyce
Its: _____VP, Product Development_____
         8/15/14

8

KP