IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
Austin Division

| | |
|---|---|
| LIKENESS DATA, LLC )<br>)<br>*Plaintiff,* )<br>)<br>v. )<br>)<br>VIGILANT SOLUTIONS, INC., a/k/a )<br>VIGILANT SOLUTIONS, LLC and )<br>MOTOROLA SOLUTIONS, INC. )<br>)<br>*Defendant.* )<br>_____ ) | Civil Action No. 1:23-cv-560-ADA |

## AMENDED COMPLAINT

Plaintiff Likeness Data, LLC ("**Likeness**"), by and through undersigned counsel, hereby brings this Amended Complaint against Vigilant Solutions, Inc. a/k/a Vigilant Solutions, LLC ("**Vigilant**") and Motorola Solutions, Inc. ("**Motorola**") and would respectfully show the Court as follows:

## STATEMENT OF THE CASE

This case arises as a result of a dispute over Plaintiff's ("**Likeness**") contract with Defendant Vigilant Solutions, Inc. a/k/a Vigilant Solutions, LLC ("**Vigilant**"). Likeness and Vigilant entered into a Data Feed License Agreement ("Licensing Agreement") whereby Vigilant was an end user of Likeness's Data ("Likeness Data"), and was permitted to transmit the Likeness Data to Vigilant's own employees and authorized agents for their business purposes. Vigilant was later acquired by Defendant Motorola Solutions, Inc. ("**Motorola**") for $445 million in January 2019. Vigilant, Motorola, or both knowingly, intentionally, repeatedly, and systematically breached the Licensing Agreement by incorporating the Likeness Data into their own data and services, which they subsequently marketed to public and private entities across America and

around the world. Through the unauthorized use of Plaintiff's proprietary data, Defendants were unjustly enriched at Plaintiff's expense. Further, Defendants' breach of the Licensing Agreement was intentional, and Defendants knew of their intention to breach the Licensing Agreement when they entered into it with Plaintiff.

## PARTIES

1. Plaintiff Likeness Data, LLC is a Delaware limited liability company with its principal place of business in Wilmington, Delaware.

2. Defendant Vigilant Solutions, Inc. a/k/a Vigilant Solutions, LLC is a Delaware corporation with its principal place of business in Livermore, California. Defendant has made an appearance in this matter and may be served with process via CM/ECF.

3. Defendant Motorola Solutions, Inc. is a Delaware corporation with its principal place of business in Chicago, Illinois. Defendant has made an appearance in this matter and may be served with process via CM/ECF.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and attorneys' fees.

5. Venue in this action is proper in the Western District of Texas under 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Travis County, which is within the Western District of Texas.

## FACTUAL BACKROUND

6. Likeness developed and operated a certain data feed which made proprietary arrest records available for transmission to, and reception by, authorized recipients for such recipients'

internal use or further distribution.

7. Vigilant operates a facial recognition system for use in law enforcement.

8. On October 1, 2014, Likeness and Vigilant entered into the Licensing Agreement for Likeness, through its Data Feed, to make the records available for Vigilant's reception and internal use to enhance its facial recognition system. **See Exhibit A.** The Licensing Agreement granted Vigilant a "limited, non-exclusive, non-transferable, non-sublicensable" license to Likeness's photo database, created and meticulously maintained by Likeness at Likeness's expense, for use by Vigilant's business activities, including its facial recognition technology. As developed by Likeness, this data was superior to its competitors, employing proprietary formulas, ideas, and techniques to supply missing information and avoid systemic errors to which those competitors are susceptible. Vigilant, and later, Motorola, were aware that they were not entitled to sublicense the Likeness Data to other parties without the express consent of Likeness under the terms of the Licensing Agreement.

9. Under the Licensing Agreement, Vigilant was merely an end user of the Likeness Data, allowed to transmit the Likeness Data to Vigilant's "own employees and authorized agents [for Vigilant]'s business purposes[.]" *Id*. The Licensing Agreement specifically barred Vigilant from sublicensing the Likeness Data without Likeness's express, prior agreement and specified that "Likeness reserves the right to amend the [pricing for its license of Vigilant] in consideration for the granting of sublicense privileges[.]" *Id.* As detailed below, Likeness was never consulted nor given an opportunity to amend the pricing license prior to Vigilant, and later Motorola's breach of the Licensing Agreement.

10. On January 7, 2019, Motorola announced that it had acquired VaaS International Holdings, Inc., the parent company of Vigilant. At no point after acquiring Vigilant did a

representative of Motorola contact Likeness to discuss the permissible and impermissible uses of the Likeness Data. Presumably, Motorola was made aware of the Licensing Agreement and its terms at the time it acquired Vigilant.

11. On December 31, 2019, Ryan Russell ("Russell") with Likeness emailed Tom Joyce ("Joyce") with Motorola to inform him of upgrades he had made to the Likeness Database, additional data that was available, and to discuss integration of said changes and additional data. One month later, having received no response to his initial email, Russell followed up with a second email to Joyce on January 31, 2020, inquiring if there was another individual he could connect with to discuss and to fulfill Likeness's obligation under the Licensing Agreement. Again, having received no response, on April 10, 2020, Russell spoke with an individual named Oksana Garoutte in Vigilant's billing department, who introduced Russell to Brian Shockley ("Shockley"), who had allegedly taken over Joyce's responsibilities with Vigilant and Motorola.

12. On or about April 13, 2020, after nearly four (4) months of silence from Vigilant and Motorola, Russell and Shockley spoke by phone. Shockley informed Russell that the proprietary Likeness Data was being used for facial recognition for over 1,500 federal, state, county, and municipal agencies. Further, Shockley explained that the Likeness Data had improved Vigilant's National Institute of Science and Technology ("NIST") facial recognition scores, which made their product more attractive and competitive in the federal marketplace. Shockley informed Russell that Vigilant and Motorola were extremely happy with the data feed and had no complaints. At no point during this conversation, or prior to this conversation, did Vigilant, Motorola, or Shockley allege that Likeness was in breach of the agreement for allegedly failing to provide data for several months. In fact, Likeness sent an invoice on January 1, 2020, via Star Nine, pursuant to the Licensing Agreement, which was paid without complaint by Vigilant and Motorola.

13. This April 13, 2020 call with Shockley was the first time Likeness was informed by any representative of Vigilant or Motorola that the data was being used in this manner, in direct breach of the Licensing Agreement, while never paying or negotiating an increase under the Licensing Agreement. The Licensing Agreement clearly did not authorize Vigilant and/or Motorola to sublicense the data to over 1,500 agencies, and accordingly, Defendants were in breach of the agreement.

14. On April 14, 2020, Russell emailed Shockley, outlining his concern that Vigilant and Motorola's use of the Likeness Data was in breach of the Licensing Agreement. Russell asked to discuss options moving forward, including the possibility of reworking the Licensing Agreement. Russell followed up on May 13, 2020, requesting a list of agencies that were provided the Likeness Data, and asking to discuss how to cure Defendants' breach of the Licensing Agreement.

15. Russell was again met with silence. Instead, on May 21, 2020, Shockley emailed Russell, claiming Likeness had breached the agreement by failing to provide data for its most recent invoice, terminating the agreement, and refusing to pay the most recent Likeness invoice. Despite claiming to have given Likeness notice of the alleged breach, no such notice was given. Shockley brazenly informed Russell of Motorola and Vigilant's intention to continue its unauthorized use of the Likeness data provided under the Licensing Agreement, that it would not pay for historical or future use of the data under the Licensing Agreement, and refusing to cure the breach from the historical use of the data. Shockley and Russell later spoke by phone, and Shockley informed Russell that the Likeness Data was still in their database, despite their termination of the Licensing Agreement.

16. Shockley's claim that Likeness breached the agreement by not providing data

pursuant to the agreement is without merit. Likeness sent 1.7 million new images to Vigilant and Motorola in April 2020, almost three weeks prior to Defendants' May 21, 2020 notice of breach. Likeness confirmed that Motorola's development team accessed and downloaded the data. At the time Defendants sent the notice of breach, any alleged breach had been cured, and any argument that the alleged breach justified Defendants' termination of the agreement was waived.

17. Further, any argument that Likness breached the Licensing Agreement was waived when Vigilant and Motorola paid the Likeness January 20, 2020 invoice without complaint.

18. Additionally, in September 2020, Russell spoke to Neil Schlisserman ("Schlisserman"), former executive vice president with Vigilant, by phone, on a matter unrelated to the present dispute. Unprompted, Schlisserman began explaining the value the Likeness Data created for Vigilant. Schlisserman stated that "All we're doing is moving electrons around and it gave us that much more margin…" and that the contracted rates they had with their government agencies increased substantially, from $5,000 per year without facial recognition to $8,000 per year with facial recognition (for the lowest tier of contracts), and with the higher tier contracts, they went from "$75,000 to over $100,000" each, just by adding the facial recognition data Likeness provided.

19. In sum, Vigilant and Motorola incorporated the Likeness Data into their own data and services, which they subsequently marketed to public and private entities across America and around the world, without disclosure to Likeness, agreement by Likeness, or repricing of the Licensing Agreement. Vigilant enriched itself to the tune of $445 million by utilizing the Licensing Data, contrary to the terms of the Licensing Agreement, to be acquired by Motorola. Neither Vigilant, nor Motorola, made any attempt to hide these actions, and further refused to provide Likeness a list of law enforcement agencies that were accessing the Likeness Data,

despite the terms of the Licensing Agreement requiring them to do so.

20. Vigilant and Motorola chose to ignore the provisions of the Licensing Agreement, breached the Licensing Agreement, and then advertised to other vendors that it had done so and would continue to do so.  Each additional end use vendor that Vigilant and Motorola created or established by using the Likeness Data is a vendor that Likeness has been deprived of accessing though the market stream, due to Vigilant and Motorola's conversion of Likeness's corporate opportunities.  Essentially, Vigilant and Motorola became wholesalers of the Likeness Data, without permission, undercutting Likeness's competitiveness in the marketplace and unjustly enriching themselves in the process to the tunes of tens, if not hundreds, of millions of dollars

21. Ultimately, Vigilant and Motorola openly and notoriously advertised their sublicensing program to new, unauthorized end users, without any disclosure to Likeness at all; *knew* that these actions would be extremely profitable before taking them; and then undertook this program *on every inhabited continent*.  However, the use of the Likeness Data in this way is clearly contrary to the terms of the Licensing Agreement.

22. Further, despite terminating the Licensing Agreement, Defendants continue to utilize and transmit the Likeness Data, despite agreeing on termination to "immediately cease any and all use of the Records and terminate all access by its employees and agents to the Records".

## COUNT I
### (Breach of Contract)

23. Plaintiff restates and reincorporates all preceding allegations as if fully set forth herein.

24. The Licensing Agreement is a valid, enforceable agreement between the parties.

25. Vigilant and Motorola's use of the Likeness Data, particularly sublicensing the Likeness Data without Likeness's express, prior agreement, and instead incorporating the Likeness Data into their own data and services, and then marketing it to public and private entities around the world was a breach of the agreement.

26. By failing to receive an express, prior agreement from Likeness prior to taking these actions, Vigilant and Motorola have breached the Agreement, causing Likeness to suffer damages.

**COUNT II**
**(Fraudulent Inducement)**

27. Plaintiff restates and reincorporates all preceding allegations as if fully set forth herein.

28. Plaintiff provided access to the Likeness Data to Defendants through the Licensing Agreement.

29. At the time of the agreement, Defendants made material misrepresentations concerning their intentions on the use of the Likeness Data.

30. Plaintiff relied on these misrepresentations, and entered into the Licensing Agreement with Defendants, with the expectation that its proprietary data was safe.

31. Defendants knowingly made these misrepresentations to Plaintiff, knowing that they were false, with knowledge that their intent at the outset was to breach the Licensing Agreement.

32. Defendants breached the Licensing Agreement by sublicensing Likeness's Data without their prior express agreement and marketed the data for their own gain. These actions were to Plaintiff's detriment, causing extensive monetary damages.

## COUNT III
**(Unjust Enrichment)**

33. Plaintiff restates and reincorporates all preceding allegations as if fully set forth herein.

34. Plaintiff conferred a benefit on Defendants by providing the Likeness Data, a valuable service, for their business purposes.

35. Defendants retained the benefit of the Likeness Data provided by Plaintiff.

36. Defendants took undue advantage of Plaintiff by breaching the Licensing Agreement and intentionally using the Likeness Data in a way that was expressly barred in the agreement.

37. Vigilant, by utilizing the Likeness Data in a manner forbidden by the Licensing Agreement, enriched itself to the tune of $445 million dollars when it was acquired by Motorola for its facial recognition "system".

38. In addition to compensatory damages, Likeness should be awarded punitive damages in an amount to be proven at trial because Vigilant and Motorola's conduct was malicious, and Vigilant and Motorola acted with willful and wanton disregard for Likeness's rights.

## COUNT IV
**(In the Alternative, Quantum Meruit)**

39. Plaintiff restates and reincorporates all preceding allegations as if fully set forth herein.

40. In the alternative, Plaintiff provided access to the Likeness Data to Defendants through the Licensing Agreement.

41. Defendants accepted and made use of access to the Likeness Data in a manner

directly in breach of the Licensing Agreement, and falsely claimed that Plaintiff breached the terms of the Licensing Agreement.

42. Defendants had full knowledge that notice that Plaintiff would continue to provide access to the Likeness Data to Defendants and would expect compensation for such access.

43. Defendants continue to utilize the Likeness Data in furtherance of their own business interests and in breach of the Licensing Agreement, despite falsely alleging that Plaintiff breached the Licensing Agreement and terminating the Licensing Agreement. These actions were to Plaintiff's detriment, causing extensive monetary damages.

## PRAYER FOR RELIEF

WHEREFORE, Likeness Data, LLC prays for the following relief:

A. Judgment against Defendants in an amount to be determined at trial, but not less than $166,875,000.00 in compensatory damages;

B. An award to Likeness Data, LLC of its pre-judgment and post-judgment interest;

C. An award to Likeness Data, LLC of its reasonable attorneys' fees and costs incurred prosecuting this action;

D. Punitive damages in an amount to be determined at trial; and

E. Such other relief as the Court deems just and equitable.

Dated: May 14, 2024                            Respectfully Submitted,

/s/ Robert A. McNiel
_____
**ROBERT A. McNIEL**
State Bar No. 24043814
rmcniel@cbsattorneys.com
**MATTHEW B. SKIDMORE**
State Bar No. 24106941
mskidmore@cbsattorneys.com

**CALHOUN BHELLA & SECHREST LLP**
325 N. Saint Paul St., Suite 2300
Dallas, Texas 75201
Telephone: (214) 981-9200
Facsimile: (214) 981-9203

**ATTORNEYS FOR PLAINTIFF
LIKENESS DATA, LLC**